IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFFREY D. JONES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) Case No. CIV-05-383-HE |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

# FINDINGS & RECOMMENDATION
# OF MAGISTRATE JUDGE

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits (DIB) under 42 U.S.C. §§416(i) and 423. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B), and for the reasons stated herein, it is recommended that the Commissioner's decision be **AFFIRMED**.

## PROCEDURAL HISTORY

Plaintiff filed his application for DIB on June 29, 2001 alleging a disability since March 2, 1999 (TR. 76-80). The application was denied on initial consideration and on reconsideration at the administrative level (TR. 24, 25). Pursuant to the Plaintiff's request, a hearing *de novo* was held before an administrative law judge (ALJ) on September 4, 2003 (TR. 271-298). The Plaintiff appeared in person and with his attorney and offered his testimony in support of the application (TR. 276-288). A vocational expert (VE) testified at the request of the ALJ (TR. 292-297). A medical expert (ME) also testified at the request of the ALJ (TR. 287-291). The ALJ issued his decision on October 29, 2004 finding that Plaintiff was not entitled to DIB (TR. 16-22). The Appeals

Council denied the Plaintiff's request for review on February 10, 2005, and thus, the decision of the ALJ became the final decision of the Commissioner (TR. 8-10).

## STANDARD OF REVIEW

The Tenth Circuit case of *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by substantial evidence. (*citations omitted*). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*citations omitted*). In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency. (*citations omitted*). We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. (*citations omitted*). If, however, the correct legal test in weighing the evidence has not been applied, these limitations do not apply, and such failure constitutes grounds for reversal. (*citations omitted*).

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (*citations omitted*).

## DISCUSSION & FINDINGS

In addressing the Plaintiff's disability application the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520.  At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, so the process continued (TR. 21).  At step two, the ALJ concluded that Plaintiff had severe impairments of cervical and lumbar disc bulging with diffuse cervical spondylosis, history of right knee surgeries, bilateral knee degenerative joint disease, left shoulder pain, and mild left carpal tunnel syndrome (TR. 21). At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix

1 (TR. 21). At step four, the ALJ found that Plaintiff lacked the residual functional capacity (RFC) to perform his past relevant work (PRW) (TR. 21).

At the point that step five is reached, a disability preventing prior work activity has been shown and the burden shifts to the Commissioner to show that the claimant retains the ability to perform an alternative work activity which exists in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). The ALJ found that Plaintiff retained the RFC to perform a limited range of light work (TR. 21). The ALJ considered the testimony of the VE and determined there were other jobs existing in significant numbers in the national economy which Plaintiff could perform (TR. 20, 22). Thus, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB (TR. 22).

On appeal to this Court, Plaintiff alleges (I) that Plaintiff lacks the RFC to perform full time work activity due to pain; (II) that since Plaintiff received worker's compensation and was considered temporarily totally disabled such should have a bearing upon whether he could work; and (III) that the ALJ erred in not giving extra weight to the opinions of his treating physicians.

MEDICAL EVIDENCE

In September 1999 Plaintiff was examined by Charles E. Bryant, M.D. (orthopedic surgeon), who assessed Plaintiff as having signs and symptoms consistent with patellofemoral pain syndrome (TR. 146). Dr. Bryant stated that non-surgical options should be utilized in hopes of eliminating the need for any more surgery; that Plaintiff did not have findings to indicate meniscal or ligamentous pathology; and that he should continue to work on an exercise program, mainly consisting of terminal extension exercises of the right lower extremity (TR. 146).

In December 1999 Plaintiff was examined by Russell F. Allen, M.D., who found in the context of a worker's compensation claim that Plaintiff was temporarily and totally impaired

3

from March 2, 1999 through November 12, 1999; and that if Plaintiff was unable to return to the type of work he was doing at the time of the accident of March 2, 1999, or to other employment of approximately equal economic value, he would be an "excellent candidate for evaluation of some type of academic or vocational rehabilitation" (TR. 151).

In July 2000 Plaintiff was examined by Scott Robertson, M.D. (neurosurgeon), who found that Plaintiff had pain with the forward flexion and extension of his neck and pain going into the intrascapular muscles (TR. 173). Dr. Robertson also found that Plaintiff had 5/5 strength throughout; that his sensory exam was normal; and that Plaintiff's deep tendon reflexes were equal and symmetric throughout (TR. 173). Dr. Robertson noted that a lumbar MRI was unremarkable except for moderate size L5-S1 disc protrusion with disc dehydration, but that such was not causing any significant thecal sac or neural foraminal narrowing (TR. 173). Dr. Robertson also noted that the cervical spine MRI showed a few cervical spondylosis with circumferential disc bulging at C4-5, C5-6 and C6-7 with the ventral subarachnoid space partially effaced at C4-5, C5-6 and C6-7 (TR. 173). Dr. Robertson's impression was of chronic neck pain with diffuse cervical spondylosis and no obvious radicular findings; but "probably having discogenic pain from the disrupted disc at multiple levels" (TR. 173). Dr. Robertson recommended conservative treatment including physical therapy and cervical epidural steroid injections (TR. 174).

In August 2001 Plaintiff underwent a consultative examination performed by James P. Metcalf, M.D., who found that Plaintiff's cervical spine had limited range of motion with tenderness to palpation; that his lumbar spine had some mild limitation to lateral bending and extension with tenderness to palpation; and that Plaintiff's shoulders, elbows, wrists, fingers, hips, knees, and ankles had a normal range of motion (TR. 188). Dr. Metcalf also found that Plaintiff's right knee had "rather marked tenderness to palpation" without swelling or instability; and that the left knee had no point tenderness but did have some tenderness with rotational

stress as with the right knee (TR. 188).  Dr. Metcalf reported that Plaintiff's sensory function, muscle strength, and muscle tone were normal; that Plaintiff could heel, toe, and tandem walk; and that Plaintiff ambulated in the hallway without difficulty (TR. 188).  Dr. Metcalf's clinical impression was of chronic neck pain secondary to annular tear and degenerative disc disease; chronic low back pain secondary to degenerative disc disease; and chronic knee pain (TR. 188).

In September 2001, a physical RFC assessment was completed by agency physicians in which they concluded that Plaintiff was able to occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stoop occasionally, and sit, stand and/or walk for a total of about six hours in an eight hour workday (TR. 199-200).  Agency physicians further concluded that Plaintiff had no other exertional, postural, manipulative, visual, communicative, or environmental limitations (TR. 199-202).

By letter dated December 23, 2002, Plaintiff's treating physician, J.E. Sequin, M.D., stated the following: "Mr. Jones has been a patient of mine for three or four years now. This note is just to verify that he has been completely disabled since March 2, 1999 as a result of an industrial accident. He has been receiving medical care since that time" (TR. 234).

## HEARING TESTIMONY

At the hearing Plaintiff testified that he was having "lots of problems with a lot of pain in the shoulder blades, wrists, arms. I just—It's like I'm falling apart" (TR. 277).  He further testified that he gets "extreme headaches" and that he had "carpal tunnel" which required him to sit with pillows a lot at home to rest his arms (TR. 279). Plaintiff further testified that he could not hold a telephone or grip a steering wheel without his hands going numb but that he could eat and write a letter without difficulty (TR. 283).  He further testified that he requires a cane; that he must lie down at least two hours a day; and that his pain medication interferes with his ability to concentrate and stay focused (TR. 283-284).  The ME testified that he did not "see any severe orthopedic problems" (TR. 290).

## I.

Plaintiff urges on appeal that the ALJ erred in his analysis of Plaintiff's pain (See Plaintiff's Brief at pages 5-12). The legal standards for evaluating pain and credibility are outlined in 20 C.F.R. §§ 404.1529 and 416.929, and were addressed by the Tenth Circuit Court of Appeals in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  First, the asserted pain-producing impairment must be supported by objective medical evidence. *Id.* at 163. Second, assuming all the allegations of pain as true, a claimant must establish a nexus between the impairment and the alleged pain.  "The impairment or abnormality must be one which `could reasonably be expected to produce' the alleged pain." *Id.*  Third, the decision maker, considering all of the medical data presented and any objective or subjective indications of the pain, must assess the claimant's credibility.

> [I]f an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence.

*Id.* at 164.

The mere existence of pain is insufficient to support a finding of disability.  The pain must be considered "disabling." *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) ("Disability requires more than mere inability to work without pain.  To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.").

In *Kepler v. Chater*, 68 F.3d 387, (10th Cir. 1995), the Tenth Circuit determined that an ALJ must discuss a Plaintiff's complaints of pain, in accordance with *Luna*, and provide the reasoning which supports the decision as opposed to mere conclusions. *Id.* at 390-91.

> Though the ALJ listed some of these [Luna] factors, he did not explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible.

*Id.* at 391. *Kepler* does not require a formalistic factor-by-factor recitation of the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied. *Id* at 1372. The

Court specifically noted that the ALJ should consider such factors as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 391. The Tenth Circuit remanded the case, requiring the Secretary to make "express findings in accordance with *Luna*, with reference to relevant evidence as appropriate, concerning claimant's claim of disabling pain." *Id.* at 391.

In the present case the ALJ reached step three of the *Luna* analysis and in assessing the credibility of the Plaintiff followed the dictates of *Kepler* by providing a meaningful discussion of the evidence which linked specific evidence to his findings (TR. 18-19).

In accordance with *Luna* and *Kepler,* the ALJ determined that the medical evidence did not support the degree of limitation claimed by Plaintiff. The absence of an objective medical basis for the degree of severity of pain may affect the weight given to subjective allegations of pain. *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993); *See Luna*, at 165 (10th Cir. 1987). Further, Although Plaintiff complained of disabling pain, none of Plaintiff's doctors provided explicit confirmation of the existence of a disabling condition and this absence of confirmation detracted from Plaintiff's credibility. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990); *Huston v. Bowen*, 838 F.2d 1131, 1129 (10th Cir. 1988).

An ALJ's determination of credibility is given great deference by the reviewing court. *See Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495 (10th Cir. 1992). On appeal, the court's role is to verify whether substantial evidence in the record supports the ALJ's decision, and not to substitute the court's judgment for that of the ALJ. *Kepler* at 391; (Credibility determinations are peculiarly within the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.

1992).

Thus, it appears from the record that both the ALJ's pain evaluation and his resultant credibility and RFC determination were all supported by substantial evidence and should not be disturbed on appeal.

## II.

Plaintiff argues that since he received worker's compensation and was considered temporarily totally disabled within that context such should have a bearing upon whether he could work (See Plaintiff's Brief at pages 12-13). A medical opinion on an issue reserved to the Commissioner, even when offered by a treating source, can never be entitled to controlling weight or given special significance. 20 C.F.R. 404.1527(e)(3); SSR 96-5p; *Musgrave* at 1375. It is the Social Security Administration, not the physician, who makes the ultimate legal determination of disability status. 20 CFR 404.1527(e); *Richardson v. Perales*. 402 U.S. 389, 399 (1971). Further, a disability determination based on the standards of another agency is not binding upon the Social Security Administration. 20 CFR 404.1504. Thus, Plaintiff's argument is without merit.

## III.

Plaintiff urges that the ALJ erred in failing to give "extra weight" to the opinions of Dr. Seguin and Dr. Allen (See Plaintiff's Brief at pages 13-14). If an ALJ disregards a treating physician's opinion, he must set forth "specific, legitimate reasons" for doing so. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). In *Goatcher v. United States Dep't of Health & Human Services*, 52 F.3d 288 (10th Cir. 1995), the Tenth Circuit outlined factors which the ALJ must consider in determining the appropriate weight to give a medical opinion.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's

8

attention which tend to support or contradict the opinion.

*Id.* at 290; 20 C.F.R. § 404.1527(d)(2)-(6).

In his decision the ALJ provided a extraordinarily detailed and thorough review of the medical evidence (TR. 18-19). He also provided specific legitimate reasons for disregarding the opinion of Plaintiff's treating physician, Dr. Seguin, that Plaintiff was "completely disabled since March 2, 1999" by stating in his decision that

> Dr. Sequin is the claimant's family doctor, not his treating orthopedist. The opinion was completed after the claimant received notice of the hearing. It is not supported by the evidence. In fact, Dr. Seguin has provided no objective evidence or explanation for his opinion, which is contradicted by the other medical evidence of record

(TR. 234, 19).

Plaintiff also argues that the ALJ erred in not giving extra weight the opinion of Plaintiff's treating physician, Dr. Allen (See Plaintiff's Brief at page 14). Plaintiff fails to specifically indicate what opinion should be given extra weight. Plaintiff mentions only that "Dr. Allen in his last report of January 12, 2003 has Mr. Jones off work between 3/2/99 and 12/18/02" (TR. 246). This statement does not even rise to the level of an opinion, was clearly made within the context of a worker's compensation proceeding, and was appropriately disregarded.

Thus, for the reasons discussed above, it appears that the ALJ properly considered the opinions of Plaintiff's treating physicians.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and should be **AFFIRMED**. The parties are advised of their right to object to these findings and recommendation within twenty (20) days of the date of the filing hereof, in accordance with 28 U.S.C. §636 and Local Court Rule 72.1 (a). The parties are further advised that failure to make

timely objection to these findings and recommendation waives their right to appeal from a judgment of the district court based upon these findings and recommendation. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

The foregoing Findings and Recommendation disposes of all issues referred to the undersigned magistrate judge in the above captioned matter.

ENTERED this the 27th day of March, 2006.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE